**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RONALD GENE STEWART** <br> **(DOC# 307065)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, ET AL** | **NO. 08-641-JJB-CN** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, January 13, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RONALD GENE STEWART  CIVIL ACTION
(DOC# 307065)

VERSUS

BURL CAIN, ET AL  NO. 08-641-JJB-CN

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 1) and the "Supplement to Original Petition for Writ of Habeas Corpus" (R. Doc. 35) filed by petitioner, Ronald Gene Stewart ("Stewart").[1] The State has filed oppositions (R. Doc. 36 and 39) to both Stewart's original and supplemental habeas petitions.

## FACTUAL BACKGROUND

This case involves a series of violent crimes that occurred between April 5, 2000 and April 23, 2000. On April 5, 2000, Rico Laborde, a known drug dealer, was at his Baton Rouge residence with his friend, John Robins, when Stewart approached and asked Laborde for a ride. When Laborde refused, Stewart asked him to come outside with him to check on Eric Hilliard (a.k.a. "Bo-Hog"), who Stewart claimed was ill. As Stewart opened the door, Hilliard entered the residence and began shooting at Laborde and Robins. Stewart drew his weapon and also began firing. Robins fled through a window, and Hilliard followed him. Stewart remained in the house and continued to shoot at Laborde at close range. Stewart and Hilliard subsequently stole marijuana and cash from Laborde's residence and fled. Laborde was able to crawl to his neighbor's house for help, and he

---

[1] Within the documents contained in the state court record submitted in this matter, Ronald Gene Stewart is also referred to as "Ronald G. Steward." It is apparent that both names apply to the petitioner herein, and for purposes of this report, the Court will refer to petitioner as "Stewart."

1

informed his neighbor that Stewart had shot him.  Both Laborde and Robins survived the shootings and later identified Stewart and Hilliard as the perpetrators.

On April 13, 2000, Stewart and Hilliard approached Lester Reed, another known drug dealer, and asked to purchase some marijuana from him.  Stewart then drew a gun and shot at Reed several times, hitting him once in the back as Reed attempted to flee.  Once Reed fell to the ground, Stewart and Hilliard stole cash, drugs, and a gun from his person.  Reed also survived and later positively identified Stewart and Hilliard as perpetrators.

Finally, on April 23, 2000, Stewart and Hillard asked Barry Franklin (who was driving a red Geo Metro belonging to his girlfriend, Karissa Steward) for a ride, and Franklin agreed.  Franklin was robbed and killed on that same day, and Hilliard and Stewart were later observed in Karissa Steward's vehicle. Both men abandoned the vehicle and fled on foot when a police officer attempted to conduct a routine traffic stop.  Latent fingerprints lifted from the vehicle's interior matched the prints of Hilliard.  Several days later, Stewart turned himself in on outstanding arrest warrants.  During interrogation, Stewart admitted to being present inside the vehicle with Hilliard on the day Franklin was robbed and killed.  The officer who attempted to conduct the traffic stop also identified Stewart and Hilliard as being the persons who fled Franklin's vehicle.

## **PROCEDURAL BACKGROUND**

On June 21, 2000, Stewart was charged by felony bill of information with three counts of armed robbery while armed with a firearm in violation of La. R.S. 14:64 and 14:64.3, three counts of attempted second-degree murder in violation of La. R.S. 14:30.1 and 14:27, and one count of second-degree murder in violation of La. R.S. 14:30.1.

2

Stewart initially pled not guilty to all charges. On October 23, 2000, his counsel filed a motion to appoint a sanity commission. The trial court granted the motion and appointed a sanity commission to determine Stewart's competency to stand trial. Following the sanity hearing, Stewart withdrew his not guilty plea and entered a dual plea of not guilty and not guilty by reason of insanity. He was then tried by a jury and convicted on all counts on October 29, 2001. On November 7, 2001, Stewart was sentenced to serve a total sentence of life plus two hundred thirty-five (235) years imprisonment at hard labor without the possibility of parole, probation, or suspension of sentence.

Stewart did not timely appeal his conviction and sentence. He filed a post-conviction relief application, seeking an out-of-time appeal, with the state trial court on May 15, 2002. The state trial court granted Stewart's request for an out-of-time appeal. Stewart then appealed his conviction to the Louisiana First Circuit Court of Appeals, asserting the following claims: (1) the trial court erred in finding him competent to stand trial; and (2) the trial court erred in failing to give him notice of the delay for filing a post-conviction relief application. The First Circuit upheld Stewart's conviction and sentence on September 17, 2004 but ruled that the trial court erred in failing to advise Stewart of the two-year limitation for filing a post-conviction relief application. Stewart applied for writs to the Louisiana Supreme Court, which were denied on June 24, 2005.

On August 11, 2005, Stewart filed a second post-conviction relief application, wherein he alleged ineffective assistance of counsel based upon his trial counsel's various failures relating to the sanity hearing and in failing to object to improper closing arguments by the prosecution. Subsequently, Stewart filed a "supplemental application for post-conviction relief" alleging a violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct.

1354, 158 L.Ed.2d 177 (2004). A Commissioner for the 19th Judicial District Court recommended, on December 15, 2005, that Stewart's second post-conviction relief application be dismissed because it was procedurally barred and lacked merit. On May 31, 2006, the Commissioner issued a second report recommending dismissal of Stewart's supplemental post-conviction relief application containing the *Crawford* claim. The state trial judge adopted the Commissioner's reports and dismissed both Stewart's second post-conviction relief application and his supplemental post-conviction relief application on December 28, 2006. Stewart applied for writs to the First Circuit on January 30, 2007, which application was denied on March 21, 2007. He also filed a writ application with the Louisiana Supreme Court on April 18, 2007, which was denied on February 1, 2008.[2]

Stewart then filed his original federal habeas petition on October 6, 2008.[3] In his original petition, he asserts the following claims: (1) the trial court erred in finding him competent to stand trial; and (2) his trial counsel was ineffective: (a) in failing to demand a fair sanity hearing, (b) in failing to investigate and get petitioner properly examined for sanity during commission of the crimes, (c) in failing to acquire a mental health expert to assist in preparation and presentation of the defense, and (d) in failing to object to improper closing arguments by the prosecution.

---

[2] Although the Court does not have copies of the official file-stamped writ applications that Stewart filed with the First Circuit and the Louisiana Supreme Court, the "Certificates" attached to those documents indicate that petitioner placed copies of the writ applications in the mail for filing on January 30, 2007 and April 18, 2007 respectively. Thus, those dates are the earliest possible dates upon which Stewart can be considered to have filed his First Circuit and Louisiana Supreme Court writ applications.

[3] Under the "prison mailbox rule," a prisoner's federal habeas corpus petition is deemed filed when he delivers the petition to prison officials for mailing to the district court." *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999). According to the "Certificate of Service" attached to Stewart's habeas petition, he placed same in the prison mail, postage prepaid and correctly addressed, on October 6, 2008. Thus, applying the "prison mailbox rule," Stewart's habeas petition was filed on October 6, 2008.

On December 1, 2008, the State filed an opposition, seeking dismissal of Stewart's original habeas petition on the basis that it was untimely and procedurally barred.  On January 19, 2009, the undersigned issued a report, recommending that the original petition be dismissed as untimely.  That recommendation was adopted by the District Judge on March 24, 2010, and Stewart's original habeas petition was dismissed with prejudice.  Stewart appealed to the U.S. Fifth Circuit Court of Appeals.  On July 11, 2011, the Fifth Circuit determined (based upon a case decided just two (2) days before the undersigned's Report and Recommendation was issued and of which the undersigned did not yet have notice at the time the recommendation was issued) that Stewart's habeas petition was timely-filed.  The Fifth Circuit therefore remanded Stewart's case to this Court for further proceedings, and on July 15, 2011, the undersigned ordered the State to respond to the merits of Stewart's original petition.  On August 9, 2011, Stewart filed a "Supplement to Original Petition for Writ of Habeas Corpus," wherein he asserts the *Crawford* violation claim that he raised in his supplemental post-conviction application.  On August 25, 2011, the State responded to Stewart's original habeas petition by re-asserting its procedural default arguments concerning claims 1, 2(a), 2(b), and 2(c) and by presenting new arguments concerning the merits of claim 2(d).  The State also responded to Stewart's supplemental habeas petition, which asserts a *Crawford* claim on September 7, 2011, asserting that such claim should be dismissed as untimely.

**LAW & ANALYSIS**

**I.     Claim Nos. 1, 2(a), 2(b), and 2(c):**

As mentioned above, in Claim No. 1, Stewart asserts that the trial court erred in finding him competent to stand trial. In arguing that claim in both the state courts and in this Court, however, Stewart does not assert a violation of any federal constitutional right or federal law and, instead, relies merely upon an alleged violation of state procedural law as the basis for his claim. Specifically, he relies upon La. C.Cr.P. art. 641, *et seq.* and state case law and statutes.

A writ of habeas corpus is available under 28 U.S.C. §2254(a) only on the basis of some transgression of federal law binding on the state courts. *Jackson v. Dickerson*, 2011 WL 1337430 (E.D.Cal 2011), citing *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985). It is unavailable for alleged error in the interpretation or application of state law. *Id.* In *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the U.S. Supreme Court reiterated the standard of review for a federal habeas court. The Court held that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Id.*, at 67-68. The Court reemphasized that "federal habeas corpus relief does not lie for error in state law." *Id.* The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." *Id.*, at 68; *Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010)(It is not the function of a federal habeas court to review a state's interpretation of its own law, and federal habeas courts will defer to the state court's interpretation of its own statute). Because Stewart's first claim rests solely upon an alleged violation of state law, it is not cognizable in this Court upon habeas

review and is subject to dismissal.

Additionally, because Stewart did not ever assert a federal constitutional violation relative to Claim No. 1 in any of his state court filings, he failed to "fairly present" a federal constitutional claim on the incompetence to stand trial issue to the state courts and therefore failed to fully exhaust such claim, as is required for habeas review.[4] *Kittelson v. Dretke*, 426 F.3d 306 (5th Cir. 2005)(To exhaust available state court remedies, a habeas petitioner must "fairly present" all the claims in his habeas corpus petition to the highest available state court, alerting the court to the federal nature of his claim); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004)("A prisoner fairly presents a claim to the state court when he asserts the claim 'in terms so particular as to call to mind a specific right protected by the Constitution' or alleges 'a pattern of facts that is well within the mainstream of constitutional litigation"); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001)("[I]t is not enough that all of the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made"). Finally, if Stewart was to return to state court and attempt to exhaust his unexhausted first claim at this juncture, he would be procedurally barred from doing so by both La. C.Cr.P. art. 930.8 (because any post-conviction relief application filed at this point would be untimely) and La.C.Cr.P. art. 930.4 (because he omitted a federal law violation from his prior presentation of Claim No. 1 to the state courts). Accordingly, Stewart's Claim No. 1 should be dismissed with prejudice as failing to assert a federal constitutional violation and as procedurally defaulted.

---

[4] On direct appeal, the Louisiana First Circuit considered Stewart's Claim No. 1 entirely in terms of state law.

Relative to Claim Nos. 2(a), 2(b), and 2(c), the Commissioner for the 19th Judicial District Court expressly concluded, during post-conviction proceedings, that such claims were procedurally barred by La.C.Cr.P. art. 930.4(A) as repetitive because Stewart had previously asserted those claims on direct appeal and they had been fully litigated and ruled upon by the First Circuit Court of Appeals.[5] The Commissioner found that Stewart had "failed to assert <u>any</u> facts that would suggest that the interest of justice require[d] reconsidering the issue regarding his capacity to proceed to trial, or any related ineffectiveness claim." *See*, R. Doc. 1-3, pp. 41-42.

As mentioned above, a federal court that reviews a state prisoner's habeas claim must respect a state court's determinations concerning its own law, including a state court's determination that a petitioner's claim is procedurally barred under state law. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 2508-09, 53 L.Ed.2d 594 (1977). In order for federal habeas review to be barred due to a state court's determination that a claim is procedurally defaulted under state law, the last state court rendering a judgment regarding a claim must clearly and expressly state that its judgment rests on a state procedural bar. *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997)(A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief). However, a petitioner may overcome such a procedural bar (and the federal court may

---

[5] La.C.Cr.P. 930.4(A) provides the following:

> A. Unless required in the interest of justice, any claim for relief, which was fully litigated on appeal from the proceedings leading to the judgment of conviction and sentence, shall not be considered.

La.Cr.Cr.P. 930.4(A).

review his claim(s)) if he shows "cause" and "prejudice" for his procedural default or demonstrates that a failure to consider his claims will result in a "fundamental miscarriage of justice."

Because the last state court to render a reasoned opinion concerning Stewart's Claim Nos. 2(a), 2(b), and 2(c), *i.e.*, the state trial court,[6] expressly dismissed those claims as repetitive pursuant to La. C.Cr.P. art. 930.4, this Court is procedurally barred from reviewing those claims herein. *See, Desalvo v. Cain*, 2002 WL 1585564(E.D.La. 2002)(La. C.Cr.P. art. 930.4 held to have acted as an independent and adequate state law ground to preclude a claim). Since Stewart has failed to offer any cause for his procedural default and has not demonstrated that he will be prejudiced or that a fundamental miscarriage of justice will occur if this Court does not review these claims, he has failed to overcome the procedural bar relating to Claim Nos. 2(a), 2(b), and 2(c), and such claims should also be dismissed with prejudice.

## II.  Claim No. 2(d):

As discussed above, in Claim No. 2(d), Stewart contends that his trial counsel was ineffective because he failed to object to improper closing arguments by the prosecution. Specifically, Stewart contends that, during closing arguments, the prosecution continuously referred to how his co-defendant, "Bo-Hog," described the victim being robbed and killed – matters that were allegedly not admitted through testimony or evidence at trial.

---

[6] See, *Bowie v. Cain*, 2002 WL 432675 (5th Cir. 2002)(Emphasis added)("The *last reasoned* state court judgment addressing [the petitioner's] claim held that it was barred by his failure to object contemporaneously to the jury instruction at trial. When a state court has denied a petitioner's claim on an independent and adequate state-law ground, federal habeas review is barred unless the petitioner shows cause for the default and actual prejudice from the alleged violation of federal law, or demonstrates that a fundamental miscarriage of justice will occur if the claims are not considered").

9

The Commissioner for the 19th Judicial District Court considered and ruled upon the merits of this argument during post-conviction relief proceedings. In order for this Court to grant an application for a writ of habeas corpus as to any claim that was previously adjudicated on the merits in state court, the Court must find that adjudication of such claim: (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (d)(2). Additionally, a state court's factual findings are presumed correct unless the petitioner rebuts the findings with clear and convincing evidence. §2254(e)(1).

The clearly established federal law applicable to this ineffective assistance of counsel claim is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate ineffective assistance under *Strickland*, a petitioner must establish:

> (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and
>
> (2) that the deficient performance "prejudiced" his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.[7] Thus, the issue relative to this claim is whether the state

---

[7] To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987)). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the

10

courts' decisions denying this claim, based upon the Commissioner's reasoning, were contrary to or an unreasonable application of *Strickland* or were an unreasonable determination of the facts in light of the evidence.

After correctly setting forth the applicable federal law standard for this claim, *i.e.*, *Strickland*, the state court Commissioner made the following findings:

> In support of this claim, the Defendant highlights the following statements by ADA O'Neal:
>
>> "I submit to you that Bo-Hog and the Defendant asked [the victim] for a ride, and he being the good Samaritan that he was, gave them a ride. But they didn't really want a ride. What they wanted was his car and whatever he had in his pockets. And so they drove him around to some strange neighborhood that wasn't his neighborhood on Marion Drive near there under some pretense and pulled up on the curb kind of behind where Mr. Bullock's car was parked. Got him out of the car; shot him right there near the driver's door of that car, and he went down and he bled. And Bo-Hog rifled his pockets. That's why all of that stuff is on the ground. Look at all of these things that were in his pockets."

---

circumstances, the challenged action might be considered sound trial strategy. *See, Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773. Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. Id. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17.

> Louisiana Code of Criminal Procedure Art. 774 states in pertinent part:
>
>> Art. 774 Argument; scope
>>
>> The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
>>
>> The argument shall not appeal to prejudice.
>>
>> The state's rebuttal shall be confined to answering the argument of the defendant.
>
> * * *
>
> Generally, the Prosecutor is permitted and has a duty to comment on, summarize, and give her appreciation of evidence in arguing facts to a jury. When the Prosecutor exceeds this latitude, a conviction will only be overturned for improper argument if the reviewing Court is firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict.
>
> A review of the Prosecutor's closing argument in the instant case fails to support this allegation. The State's closing argument does not exceed the bounds set by statute, and appears to have been limited to the evidence admitted at trial, conclusions of fact to be drawn from the evidence, and to the law applicable to the case. Thus, Defense Counsel had no legal or factual basis by which to object during the ADA's closing argument.

*See*, Commissioner's Recommendation, R. Doc. 1-3, pp. 46-47 [Footnotes omitted].

As mentioned above, the Commissioner's factual findings regarding this claim are presumed correct. Stewart has failed to carry his burden of overcoming that presumption with clear and convincing evidence. He has not presented any arguments as to how the Commissioner's conclusions constituted an unreasonable application of *Strickland* or an unreasonable determination of the facts in light of the evidence. Instead, he simply

reiterates the arguments he asserted in state court concerning why he believes his counsel was ineffective.

Furthermore, the undersigned agrees with the State that the Commissioner's conclusions are an objectively reasonable application of *Strickland* to the facts of this case. The Commissioner correctly explained that the closing arguments in question did not exceed the latitude permitted by state law since they were reasonable inferences and conclusions of fact drawn from evidence in the record (*i.e.*, the prosecution's appreciation of and commentary on the facts and evidence presented),[8] and as a result, defense counsel had no valid basis for asserting an objection to such arguments. It is well-settled law that the failure to raise a meritless, futile objection does not constitute ineffective assistance of counsel under *Strickland*. *See, Shields v. Dretke*, 2005WL 388393, **14 (5th Cir. 2005), citing *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

Finally, even assuming that the prosecution exceeded the scope of the statute and engaged in improper arguments and that defense counsel was deficient in failing to object thereto, Stewart's claim nevertheless fails because he has not demonstrated prejudice. More precisely, he has failed to produce clear and convincing evidence demonstrating that, if his counsel had objected to the prosecution's alleged improper argument, there is a reasonable probability that the result of his trial would have been different. Considering the

---

[8] The Commissioner did not specifically quote, in his recommendation, the entirety of the prosecution's closing arguments that Stewart called into question. *See*, R. Doc. 1-1, p. 34 (containing two additional paragraphs of the prosecution's closing argument that Stewart places at issue). The undersigned nevertheless finds that even the additional arguments questioned by Stewart fall within the broad scope of La.C.Cr. P. art. 774, and even assuming they do not, the outcome of Stewart's trial would not have been any different if his counsel had objected to those additional arguments.

significant evidence linking Stewart to the crimes in question, which included identification testimony, a confession by Stewart, and other physical evidence, the undersigned cannot conclude that an objection to the closing arguments in question would have altered the outcome of Stewart's case.

### III.     Supplemental habeas claim - *Crawford* violation:

As to Stewart's remaining *Crawford* claim,[9] which he asserted through a "supplement" to his original habeas petition on August 9, 2011, nearly three (3) years after his original habeas petition was filed, the State contends that such claim does not "relate back" to the filing date of his original habeas petition and is therefore time-barred. The U.S. Supreme Court has held that habeas corpus proceedings are civil in nature and governed by the civil procedure rules for amendment and "relation back" of pleadings set forth in Fed. R. Civ. P. 15(c)(2). That Rule provides that amendments "relate back" to the date of the original pleading when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court, however, has noted that the phrase "conduct, transaction, or occurrence" is not to be interpreted so broadly in the habeas context to allow any amendment to relate back as long as the amended claim stems from the habeas petitioner's trial, conviction or sentence. Instead, the Supreme Court held, in *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562 (2005), that, under Rule 15(c), a habeas petitioner may amend the petition to add claims after the one-year statute of limitations has expired, but those additional claims will not "relate back" if they are

---

[9] *Crawford* held that out-of-court testimonial statements are *per se* inadmissible against a criminal defendant unless the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, at 68.

14

supported by facts that differ in time and type from those alleged in the original, timely-filed petition.

In *Pierce v. Adams*, 2010 WL 95244 (E.D.Cal. 2010), the court held that an amended claim of ineffective assistance of counsel filed outside the one-year limitations period did not "relate back" to the filing of the petitioner's timely original habeas petition, which included claims that certain admitted evidence deprived the petitioner of his Confrontation Clause rights and constituted impermissible vouching evidence, even though the original and supplemental claims rested upon some similar facts. *Id.*, at *8. The court noted that the "dispositive facts" relating to the original and supplemental claims were different. *Id.* Specifically, it noted that, under an ineffective assistance of counsel claim, the court looks to the actions of counsel (from an objective perspective) to determine what counsel should have done. *Id.* By contrast, with the Confrontation Clause claim, the court looks at whether constitutional error occurred as a result of the admission of an out-of-court hearsay statement by a witness that is testimonial in nature. *Crawford*, at 1365. Similarly, the district court, in *Kinard v. Palakovich*, 2006 WL 3366168 (E.D.Pa. 2006), held that, where the petitioner's entire original habeas petition focused on the ineffectiveness of counsel and did not allege any other constitutional errors, the Confrontation Clause claim regarding hearsay testimony of a detective who recounted the statement of a codefendant at trial, which was contained in petitioner's amended habeas petition, was untimely and did not "relate back" to the original filing date. *Id.*, at *4.

Thus, although Stewart's *Crawford* claim relies, in part, upon some of the same facts as his Claim No. 2(d) (*i.e.*, allegedly improper closing arguments by the prosecution referencing information the prosecutor purportedly ascertained from an out-of-court

15

confession by Stewart's co-defendant), the *Crawford* claim nevertheless also relies upon other evidence (specifically, pages 988-993 of the trial transcript)[10] and involves different "dispositive facts." The Court's disposition of his *Crawford* claim would involve a completely different perspective and analysis of the facts referenced in the two claims, and as a result, the Court considers the *Crawford* claim to be one that asserts a "new ground for relief" that does not "relate back" to the original filing date in this matter. Put another way, since the *Crawford* claim does not simply "clarif[y] or amplif[y] a claim or theory in the original" petition, it is an entirely new claim that does not "relate back" to the date of the original petition. *See, Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001)(If a new claim merely clarifies or amplifies a claim or theory already in the original petition, the new claim may relate back to the date of the original petition and avoid a time bar).[11]

Furthermore, there is no valid excuse for Stewart's three (3) year delay in asserting his *Crawford* claim in this Court. As discussed above, the state courts ruled upon both the claims asserted in his original habeas petition and his *Crawford* claim at the same time during his post-conviction proceedings, and all of those proceedings were complete eight (8) months prior to the time that he filed his original habeas petition. Thus, he had full knowledge of and could have asserted his *Crawford* claim at the same time that he filed his other claims in his original habeas petition; yet, he made absolutely no mention of his

---

[10] Pages 988-993 of the trial transcript contain testimony by a Sergeant with the Baton Rouge Police Department, Latent Division, about latent fingerprint comparisons of Stewart's co-defendant linking him to the crime.

[11] *See, Boretsky v. Ricci*, 2011 WL 3625884 (D.N.J. 2011), quoting *U.S. v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)(Fed. R. Civ. P. 15(c)(2) applies to habeas petitions insofar as a district court may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief); *U.S. v. Marin-Arreola*, 2009 WL 3255300 (S.D.Tex. 2009)(same).

16

*Crawford* claim in his original petition. He presently offers no excuse for his failure to timely assert that claim. In sum, the undersigned agrees with the State that Stewart's recent assertion of this constitutional claim is "an untimely attempt to add an entirely new federal claim to his [habeas petition]" in an "attempt to circumvent the AEDPA's time limits," which this Court, in its discretion, should not permit. Stewart's *Crawford* claim should therefore also be dismissed with prejudice.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 1) and the "Supplement to Original Petition for Writ of Habeas Corpus" (R. Doc. 35) filed by petitioner, Ronald Gene Stewart, should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, January 13, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**