**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RONALD G. STEWART (#307065)**                                     **CIVIL ACTION**

**VERSUS**

**WARDEN BURL CAIN**                                                          **NO. 08-641-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 30, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**RONALD G. STEWART (#307065)**                                    **CIVIL ACTION**

**VERSUS**

**WARDEN BURL CAIN**                                                       **NO. 08-641-JJB-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] This Court initially dismissed the petitioner's application upon a finding that the petitioner's claims were in part procedurally defaulted, in part without substantive merit, and in part untimely. *See* R. Docs. 44 and 47. In connection with the petitioner's subsequent appeal, the United States Court of Appeals for the Fifth Circuit granted a certificate of appealability, vacated this Court's determination that certain of petitioner's ineffective assistance of counsel claims were procedurally barred, and remanded the matter to this Court, directing the Court to address "the claims of ineffective assistance of counsel found by be barred by [Louisiana Code of Criminal Procedure] Article 930.4(A)." *See* R. Doc. 58. Pursuant to the directive of the appellate court, this Court entered an Order (R. Doc. 62), directing the State to file a response to the petitioner's application and to address the merits of the claims that had been remanded to this Court. The State has filed such a response (R. Doc. 64), and the petitioner has filed an opposition thereto (R. Doc. 65). There is no need for oral argument or for an evidentiary hearing.

---

[1] This Court issued a Ruling in March 2010, dismissed the entirety of the petitioner's application upon a finding that the claims asserted therein were untimely. *See* R. Docs. 13 and 21. That determination, however, was vacated on appeal. *See* R. Doc. 32.

In the instant application, the petitioner challenges his 2001 convictions and sentence entered in the Nineteenth Judicial District for the Parish of East Baton Rouge, State of Louisiana, on three counts of armed robbery, three counts of attempted second degree murder and one count of second degree murder. As pertinent to the claims remaining before this Court, the petitioner contends that he was provided with ineffective assistance because his attorney (a) failed to demand and assure a full, fair, and adequate sanity hearing, (b) failed to investigate and failed to have the petitioner properly examined for sanity during the commission of the offenses, and (c) failed to request and obtain a mental health expert to assist in the preparation and presentation of the defense.

I.      **Procedural and Factual Background**

The Court will not engage in a detailed recitation of the procedural history of this case, which history has been recounted at length in a prior Magistrate Judge's Report. *See* R. Doc. 44. It is sufficient to note at this juncture that prior to trial, the petitioner's initial court-appointed attorney filed a motion to appoint a sanity commission to determine the petitioner's competency to stand trial. In response, the trial judge appointed two mental health professionals, who were later joined by a third, and these experts each met separately with the petitioner and conducted psychological evaluations. Following a judicial sanity hearing conducted on April 4, 2001, at which the three experts testified and were cross-examined, the trial court found the petitioner competent to proceed. The petitioner then withdrew his plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. In addition, the petitioner thereafter retained an attorney to represent him in place of his prior court-appointed counsel, and the new attorney, after obtaining and reviewing a transcript of the referenced sanity hearing, filed a motion to upset the initial sanity determination and to appoint a new sanity commission. That motion was denied

by the trial court. The petitioner then proceeded to trial before a jury and was found guilty on all counts on October 29, 2001. On November 7, 2001, the petitioner was sentenced to life imprisonment in connection with the charge of second degree murder and to an additional 230 years in confinement in connection with the remaining counts, with all sentences to run consecutively. The petitioner thereafter pursued an out-of-time appeal of his convictions and sentences, and the Louisiana appellate courts ultimately rejected his claims on direct appeal. *See State v. Steward*, 885 So.2d 55 (La. App. 1st Cir. 2004), and *State ex rel. Steward v. State*, 904 So.2d 727 (La. 2005). In addition, the petitioner filed a subsequent application for post-conviction relief in the state trial court and, after denial thereof, sought supervisory review in the state appellate courts, which courts denied review on March 21, 2007 and February 1, 2008, respectively. *See State ex rel. Stewart v. State*, 976 So.2d 714 (La. 2008).[2]

   The evidence adduced at the petitioner's trial reflects that this case involved a series of violent crimes that occurred between April 5 and April, 23, 2000. On April 5, 2000, Rico Laborde, a known drug dealer, was at his Baton Rouge residence with his friend, John Robins, when the petitioner knocked on Laborde's door (for the third time that day) and asked Laborde for a ride to a gas station. When Laborde refused, the petitioner asked Laborde to come outside to check on Eric Hilliard (a.k.a. "Bo-Hog") who the petitioner claimed was ill. As Laborde opened the door, Hilliard entered the residence and began shooting at Laborde and Robins. The petitioner then drew a weapon and also began firing. Robins fled through a window, and Hilliard followed. The petitioner remained in the residence and continued to shoot at Laborde at close

---

[2]  The petitioner is sometimes referred to as "Ronald G. Steward" and sometimes as "Ronald G. Stewart." It is apparent that both names apply to the petitioner herein.

range. The petitioner and Hilliard subsequently stole marijuana and cash from Laborde's residence and fled. Laborde was able to crawl to a neighbor's house for help, and informed the neighbor that the petitioner had shot him. Both Laborde and Robins survived the shootings and later identified the petitioner and Hilliard as the perpetrators at trial.

A little over one week later, on April 13, 2000, the petitioner and Hilliard approached Lester Reed, another known drug dealer, and asked to purchase some marijuana. The petitioner then drew a gun and shot Reed several times, hitting him once in the back as Reed attempted to flee. Once Reed fell to the ground, the petitioner and Hilliard stole cash, drugs, and a gun from him. Reed also survived the attack and later positively identified the petitioner and Hilliard as the perpetrators at trial.

Finally, a little over one week later, on April 23, 2000, the petitioner and Hilliard asked Barry Franklin (who was driving a red Geo Metro belonging to his girlfriend, Karissa Steward) for a ride, and Franklin agreed. Franklin was later found robbed and killed that same day, and Hilliard and the petitioner were later observed driving in Karissa Steward's vehicle.  Both men abandoned the vehicle and fled on foot when a police officer attempted to conduct a routine traffic stop. Latent fingerprints lifted from the vehicle's interior matched the prints of Hilliard. Several days later, the petitioner turned himself in on outstanding arrest warrants relative to the first two incidents. During the ensuing interrogation, the petitioner admitted to having been present inside the vehicle with Hilliard on the day that Franklin was robbed and killed. The officer who attempted to conduct the traffic stop also identified the petitioner and Hilliard as having been the persons who fled on foot from Karissa Steward's vehicle after the stop.

**II.**     **Legal Discussion**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011);

*McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster, supra*, 563 U.S. at 182. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 184. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

The petitioner's claims that have been remanded to this Court by the Fifth Circuit are that he was provided with ineffective assistance of counsel in several respects in connection with the determination of his competency, both to stand trial and at the time of the charged offenses. In this regard, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case.

### A.   Counsel Was Not Ineffective For Failing To Ensure That The Petitioner Had A Full, Fair And Adequate Sanity Hearing

The constitutional standard for competency to proceed to trial is whether a defendant has a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). It is a violation of due process to try and convict a criminal defendant who lacks mental competence. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Carter v. Johnson*, 131 F.3d 452, 459 (5th Cir. 1997). In order to protect this right, a state must provide a criminal defendant with procedures to ensure that the accused is not tried or convicted while incompetent. *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983). However, a petitioner who seeks federal habeas relief on the ground that his procedural rights relative to competency have been violated must be able to point to evidence presented to the trial court that raised a *bona fide* doubt about his competency at the time of trial. *Id*. The test in such instance is an objective one based on what was known to the trial court at the time of trial, *Carter v. Johnson, supra*, 131 F.3d at 459 n. 10. The fact-finding process must rest on procedures and evidence "sufficient to permit a trier of fact reasonably to assess an accused's competency against prevailing medical and legal standards." *Holmes v. King, supra*, 709 F.2d at 967. The adequacy of the procedures varies according to the existing "fact matrix," but the Fifth Circuit has "never suggested that a state court must conduct a full-blown competency hearing every time there is the slimmest evidence of incompetency." *Id.*

The petitioner first contends that his counsel was ineffective for "failure to demand and assure a full, fair, and adequate sanity hearing." The record is clear that the petitioner's appointed attorney did in fact file a request for a sanity commission, and one was appointed by the state

court. The petitioner was thereafter evaluated by three mental health professionals, each of whom testified at a hearing before the state court regarding their findings. Ultimately, each of them concluded that the petitioner suffered with serious psychological and developmental issues but was able to understand the nature of the proceedings against him and to assist his attorney with his defense. The petitioner's attorney vigorously cross-examined the witnesses relative to their respective findings, pointed out apparent weaknesses and inconsistencies in their testimony, and pointed out the severity of the petitioner's underlying deficits and diagnoses, his past medical history and treatment, and the medications that had been prescribed to him to manage his conditions. Notwithstanding, the trial court ultimately accepted the opinions of the medical experts and found that the petitioner was competent to proceed to trial.

In his original application before this Court, the petitioner did not point to any specific deficiency in his attorney's conduct relative to the sanity hearing other than to suggest that counsel should have provided a copy of the petitioner's medical records, "dating back to the age of eleven or twelve," to Dr. Lynn Simon, one of the examining physicians, for review. *See* R. Doc. 1-1 at p. 21. The remainder of the petitioner's discussion relative to this issue in his original application was simply a recitation of the testimony provided by the three examining mental health care professionals, coupled with an implicit suggestion that the factual determination made by the trial court as to competency was incorrect. Thus, as was found by the state court Commissioner in reviewing this contention:

> [T]he Defendant alleges that his Lawyer rendered constitutionally ineffective assistance for failing to "demand" and "assure" that the Defendant was afforded a fair sanity hearing. However, he offers no facts in support of this claim. He offers no action taken that should not have been and no action that should have been taken that was not taken to insure a fair hearing. Instead, he focuses primarily on the testimony of the physicians who evaluated him. One claiming ineffective assistance of Counsel must identify specific acts or omissions. General statements and conclusory charges will not suffice. Under

> *Strickland*, a Defendant is required to allege facts to support both deficient conduct, as well as prejudice in the outcome of the trial. In this instance, the Defendant has done neither. Therefore, this sub-claim should be dismissed without a hearing.

*See* R. Doc. 1-3 at pp. 42-43.

Now, upon remand, the petitioner again provides only a summary of the testimony of the three experts at the sanity hearing and asserts, as the only perceived deficiency of his attorney in connection with the competency hearing, that the attorney failed to obtain and provide to Dr. Lynn Simon prior to the hearing (and possibly to the other two experts), copies of the petitioner's prior medical records. In this regard, the petitioner emphasizes particularly his medical records from the Greenwell Springs Hospital during a five-month period in 1986 when the petitioner was twelve years of age. The petitioner also complains that these medical records were not introduced into evidence at the sanity hearing or at trial. The correctness of the trial court's conclusion as to the petitioner's competency is not directly before this Court for review. Instead, as noted above, this matter was remanded only to address the petitioner's claims regarding the alleged ineffectiveness of his attorneys. This Court concludes, however, that the petitioner has failed to show either deficient performance by the petitioner's attorney or prejudice resulting to the petitioner in connection with this first claim. Specifically, there is no suggestion in the record that a review of the petitioner's prior medical records by Dr. Simon or by either of the other two experts would have had any impact upon their opinions or upon the ultimate conclusion of the trial judge.

The three testifying experts, Dr. Lynn Simon, Dr. Ivory Toldson and Dr. Ron Taravella, each examined and interviewed the petitioner and determined that the petitioner was competent to proceed to trial. Dr. Simon indicated that he had reviewed the petitioner's medical records at the East Baton Rouge Parish Prison and was aware that the petitioner had a history of mental

illness and a prior diagnosis of paranoid schizophrenia. *See* Trial Record at p. 306-07. Based upon his evaluation of the petitioner, however, and notwithstanding some confusion in his testimony, Dr. Simon ultimately testified that he was "unequivocal" about the petitioner's competency to proceed at trial and didn't have "any problem" or "any difficulty with [the petitioner's] ability to proceed." *Id.* at p. 312. Dr. Toldson then testified that he administered several psychological tests to the petitioner and that he concluded, similarly, that the petitioner's competency to proceed was "easily discerned," in part because Dr. Toldson interpreted the petitioner to be exaggerating his symptoms so as to appear worse than he was. *Id.* at p. 320. The third expert, Dr. Ron Taravella, importantly, had been the petitioner's treating physician during an 18-month period preceding the commission of the offenses, had seen the petitioner no fewer that twelve (12) times during that 18- month period, and was continuing to treat the petitioner after his arrest and prior to the hearing. As such, Dr. Taravella had substantial familiarity with the petitioner's condition and mental abilities and was of the belief that the petitioner was competent to proceed to trial. *Id.* at p. 334.

In attempting to refute the foregoing, the petitioner places principal emphasis upon his assertion that one of the experts, Dr. Simon, (1) had been the petitioner's physician at Greenwell Springs Hospital between February and May, 1986, 15 year earlier, when the petitioner was twelve years of age, (2) that the Greenwell Springs medical records had not been subpoenaed or provided to Dr. Simon for review, and (3) that Dr. Simon testified at the hearing that a review of prior medical records "would be very important either way." The Court finds, however, that this last assertion is not a fair characterization of Dr. Simon's testimony. To the contrary, the Court interprets Dr. Simon's testimony to be that whereas a review of the petitioner's older medical records might have added weight to the expert's understanding of the petitioner's psychiatric

history, records more contemporaneous to the crime or hearing would be most critical in making a competency evaluation. This is clear from the following exchange between the petitioner's attorney and Dr. Simon:

> Q: If you were provided with reports of his psychotic history dating back to the ages of ten or eleven, would that have any influence on your opinions as to whether he would be malingering now?
>
> A: Well, I think that's two separate issues. If I were provided with reports about his psychiatric career dating back from age ten or eleven it might add weight – it would certainly add weight to my understanding about his long standing psychiatric history and his history of decompensation. But more particularly I would be interested in the psychiatric history as it relates to his functioning on or about the time of the commission; that is within weeks or months, or even days, of that date of the alleged commission. That would be most important as to how he was functioning, what he was doing, whether he was on medication, whether he was responding to medication, and even – or as just as importantly if he were on medication, and functioning on medication did he still participate in a crime. So those are very important facts that we often don't have – we're not privy to. But if that were information that was presented to me and it were to shed additional light or corroborate what I would already know, that I think would be very important either way.
>
> Q: And one final question. Nowhere in your report did you conclude that Mr. Steward was malingering?
>
> A: I did not conclude that he was malingering, no.

*Id*. at p. 316. Based on the foregoing, the Court concludes that the petitioner has failed to show that a review of the 15-year old medical records by Dr. Simon or by either of the other two experts would have altered their respective conclusions and testimony regarding the petitioner's competency to proceed to trial. In the absence of such a showing, the petitioner is unable to establish that he was prejudiced by his attorney's conduct during the sanity hearing or that the result of the hearing would have been different had those records been subpoenaed, introduced into the record or reviewed by the health care providers or the state trial court. As previously noted, the petitioner's attorney vigorously questioned each of the experts during the hearing and

pointed out purported weaknesses and inconsistencies in their respective reports and conclusions, most particularly in seeming inconsistencies in Dr. Simon's confusing testimony. There is no indication whatever, however, that a review of the 15-year-old records relating to the petitioner's treatment when he was a teenager would have altered those conclusions.   Accordingly, the Court finds that the petitioner has failed to show that his attorney provided ineffective assistance in connection with the sanity hearing or that he suffered any prejudice as a result thereof. As such, there was no error in the state court determination to similar effect.[3]

### B. The Petitioner Has Failed To Show That Counsel Was Ineffective For Failing To Investigate And Have The Petitioner Properly Examined Relative To Sanity At The Time Of Commission Of The Offenses

The Petitioner also complains that his subsequently retained trial attorney, with possession of the petitioner's medical records and with knowledge regarding the petitioner's history of mental illness, failed to undertake further investigation relative to the petitioner's state of mind at the time of commission of the charged offenses. In this regard, the petitioner again places most of his emphasis upon his attorney's failure to subpoena the above-referenced Greenwell Springs Hospital records and call Dr. Lynn Simon at trial – and/or other unidentified physicians – who may have treated the petitioner in the past. The petitioner fails, however, to provide any indication as to what testimony Dr. Simon or any other proposed witness may have provided relative to the petitioner's sanity at the time of the offenses. Further, the petitioner has

---

[3] For the first time in his supplemental memorandum on remand, R. Doc. 65 at p. 7, the petitioner makes a conclusory assertion that his attorney should have called his mother and sister to testify regarding the petitioner's history of mental illness. Not only is this claim unexhausted, not having been presented for review before the state courts, but there is nothing to suggest that such testimony would have had any impact upon the conclusions of the mental health experts or the trial court. As previously noted, these experts were aware of the petitioner's history of mental illness and of his prior diagnosis of paranoid schizophrenia.

failed to provide any affidavits or other documentary evidence to establish the availability of any purported witnesses or to establish the substance of their testimony.

A petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010), *quoting United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). To prevail on a claim based upon uncalled witnesses, a petitioner must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable. *Id*. Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) ("Ordinarily, a defendant's failure to present some evidence from the uncalled witness ... would be fatal to an ineffective assistance of counsel claim"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). In the instant case, the petitioner has wholly failed to show the substance of any testimony that might have been obtained from uncalled witnesses upon their review of the petitioner's medical records. Whereas the petitioner asserts that "Dr. Simon could have testified to the medications petitioner was prescribed, the reason they were prescribed, and most importantly would have been able to explain petitioner's long term existing mental problems," and was 'the one doctor most familiar with petitioner's treatment and diagnosis at an early age," *see* R. Doc. 65 at pp. 8-9, this contention overlooks the fact that Dr. Simon had last treated the petitioner approximately 15 years before the commission of the offenses and that the physician who was in fact called to testify on the petitioner's behalf, Dr. Ron Taravella, was in a far better position to address the petitioner's contemporaneous treatment, medication, diagnoses and

mental state, having been the petitioner's treating physician for a period of 18 months prior to the commission of the offenses.   Accordingly, in the absence of any credible showing that a failure to investigate or subpoena Dr. Simon for trial, or any other unidentified physicians, may have had an impact upon the jury's determination, the petitioner's claim of ineffective assistance of counsel in this regard must fail.

Finally, at no time does the petitioner assert before this Court that he was in fact unable to distinguish between right and wrong at the time of the charged offenses. In contrast, the State called numerous witnesses at trial, and several of them provided testimony regarding the petitioner's actions during the pertinent events, specifically that the petitioner appeared to be acting normally and was not acting in such a way as to exhibit mental incapacity. *See* Trial Record at pp. 685, 1048-51 and 1058-59. The record further reflects that the actions of the petitioner and his accomplice were part of an organized scheme that took place over several weeks and included, in two instances, targeting known drug dealers who might have been expected to have large sums of money. Upon turning himself in to the police, the petitioner appeared calm and lucid, indicated that he understood his *Miranda* rights, and was able to respond appropriately to questioning.   *See id*. at pp. 1048-59. These are not the actions of a person so mentally incapacitated as to be unable to understand the nature of his actions. Accordingly, the Court finds that the petitioner has failed to show prejudice in this context and finds no error in the determination of the state trial court that this "speculative" claim regarding competency at the time of the offenses was groundless.[4]

---

[4]   The petitioner included an assertion in his original application before this Court that his attorney provided ineffective assistance by failing to call as a witness at trial the petitioner's accomplice, Eric Hilliard, who had purportedly provided an "affidavit" several

C.  **Counsel Was Not Ineffective For Failing To Request Or Obtain A Mental Health Expert To Assist In The Preparation And Presentation Of The Defense**

Finally, relying upon *Ake v. Oklahoma*, 470 U.S. 68 (1985), the petitioner makes the assertion that his attorney should have requested funds to retain an independent expert on the issue of competency. As pointed out by the State, however, *Ake* addresses the right of an *indigent* criminal defendant to obtain the assistance of an expert at state expense when such assistance "may well be crucial to the defendant's ability to marshal a defense." *Id*. at 80. In the instant case, the petitioner was not proceeding as an indigent criminal defendant inasmuch as he had obtained the benefit of retained counsel for trial. Whereas the petitioner makes the conclusory assertion that he "used all funds he possessed to pay his attorney," and was therefore indigent, *see* R. Doc. 65 at p. 14, this assertion is unsupported and uncorroborated. Further, the record is ambiguous as to whether the petitioner's attorney in fact obtained the assistance of an

---

weeks before trial recanting a prior assertion that the petitioner had been involved in the murder and armed robbery of Barry Franklin. *See* R. Doc. 1-1 at p. 29 and R. Doc. 1-6 at p. 34. The petitioner, however, has not addressed this claim in his supplemental memorandum on remand. *See* R. Doc. 65. In addition, the Court notes that in granting a certificate of appealability in this case, the Fifth Circuit focused upon the petitioner's "ineffective assistance claims *as to the sanity hearing*." *See* R. Doc. 57 (emphasis added). Notwithstanding, the petitioner is nonetheless unable to show that the failure to call this witness was an unreasonable strategy on the part of his attorney at trial. Even assuming that Eric Hilliard was willing to testify at the petitioner's trial that the petitioner had not participated in the murder and armed robbery of Barry Franklin, the testimony of this witness would certainly have underscored the petitioner's culpability in connection with the other felony charges pending against him, also involving Hilliard, and would have undermined the petitioner's principal defense relative to his capacity at the time of commission of the offenses. Further, as noted by the state court Commissioner in rejecting this claim, recantations are "highly suspect evidence," and the Court notes that this particular recantation is even more so, considering that the petitioner admitted to police that he had been a passenger in the vehicle taken from the deceased, Barry Franklin, on the day of Franklin's murder, *see* Trial Record at p. 1057, and considering that the petitioner had been identified as having fled from the vehicle when it was stopped by police, *see id*. at p. 1036.

independent expert in the person of Dr. Ron Taravella, the petitioner's treating physician before and after the commission of the charged offenses. As noted in the opinion of the Louisiana Court of Appeal for the First Circuit, the state court record does not reflect that an Order was issued appointing Dr. Taravella to be a member of the sanity commission, and it was the petitioner's attorney who in fact called Dr. Taravella to testify at both the sanity hearing and at trial. *See* R. Doc. 1-2 at p. 58.

In any event, as with the petitioner's claim regarding his attorney's purported failure to investigate or call Dr. Lynn Simon as a witness, the petitioner has failed to support his claim regarding the retention of an additional expert with any degree of specificity and has therefore failed to establish that he was prejudiced by his attorney's conduct. As stated by the Fifth Circuit in *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010), a petitioner's claim regarding the failure of his attorney to retain and call an expert as a witness at trial is essentially a claim regarding an uncalled witness, a claim that is,

> not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by "nam[ing] the witness, deomonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense." This requirement applies to both uncalled lay and expert witnesses.

*Id*. at 808 (citations omitted). *See also Earhart v. Johnson,* 132 F.3d 1062, 1067-68 (5th Cir. 1998) (concluding that the district court "properly concluded that [the petitioner] was not entitled to relief … because … he still had failed to show or even allege that an expert could be found whose testimony would have altered the outcome of the state court trial"); *Williams v. Stephens*, 2015 WL 3986156, *10-11 (N.D. Tex. June 30, 2015) (same); *Burton v. Epps*, 2012 WL

3582686, *10 (S.D. Miss. July 19, 2012), *Magistrate Judge' Report adopted*, 2012 WL 3579855 (S.D. Miss. Aug. 17, 2012) (same). In the instant case, as in *Earhart v. Johnson, supra*, the petitioner has failed to identify an available expert witness who would have testified on his behalf or shown that such a witness would have testified in the petitioner's favor, *i.e.,* that the petitioner was incompetent to stand trial or incompetent at the time of the charged offenses. Thus, as stated in *Earhart*, even "assuming defense counsel was deficient in failing to request an expert, [the petitioner] has not established that this failure prejudiced his defense or otherwise rendered the outcome of his trial unreliable." *See id*. at 1068.

Based upon the foregoing, the Court concludes that the petitioner's claims of ineffective assistance of counsel should be rejected and that his application for federal habeas corpus relief dismissed.

### III.     Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the

instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## IV.     Recommendation

It is recommended that the petitioner's application for habeas corpus relief be denied and that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on August 30, 2016.

                                              **RICHARD L. BOURGEOIS, JR.**
                                              **UNITED STATES MAGISTRATE JUDGE**